## NAGLE *v.* HOMER.

Where a draft is accepted conditionally, to be paid upon the happening of a contingency, whether the contingency has happened is a question for the jury.

A draft payable, in terms, out of an "appropriation" for work done by the acceptor, becomes due on payment for the work by government.

APPEAL from the Superior Court of the City of San Francisco.

The complaint alleges that the defendant is indebted to the plaintiff in the sum of eighty-six hundred and six dollars and sixty-seven cents, on a certain acceptance, or instrument, in writing, as follows:

"$8,606 67.                           SAN FRANCISCO, Jan. 31st, 1854.

"Please pay to my own order the sum of eight thousand six hundred and six dollars and sixty-seven cents, for value received, the same to be paid out of the appropriation,· as soon as made, for the extra work done to the United States Marine Hospital building in this city, a statement of which has been made out and regularly forwarded by the proper authorities to the Secretary of the Treasury of the United States, to be laid before Congress at the present session; this sum being in full of settlement this day made, for the furnishing and laying the brick in said building, agreeably to the terms of the contract between C. Homer and myself.                           GEO. D. NAGLE.

"To C. HOMER, ESQ., San Francisco."

On the face of which is written as follows, in the handwriting of defendant: ·" Accepted, C. HOMER." And avers that the appropriation has been made, and the amount paid to the defendant, out of which the above draft was to have been paid, but that the defendant refused to pay, etc., and claims legal interest

from the ———— day of ————, 1855, the time of such appropriation and payment.

On the fifth of July, an answer was filed for defendant, denying generally all the allegations of the complaint, and claiming judgment against the plaintiff for two thousand dollars, for goods sold and delivered, and on an account stated.

The case came on for trial on the eighteenth July, and the acceptance written across the face of the writing declared upon, being admitted to be the handwriting of the defendant, the evdence showed:

That in November, 1851, the defendant contracted with the United States to erect the marine hospital in San Francisco, and complete it in one year, for one hundred and forty thousand dollars; that he was not furnished with a site until December, 1852, more than a year after, and has preferred a-claim for damages in consequence, which is now pending, for upwards of forty thousand dollars; that there were two or three supplemental contracts; that the original contract provided that the walls were to be built hollow, and the last supplemental contract provided that they should be built solid, and that the defendant should be paid fifty-five dollars per thousand bricks, for all the extra brick-work required in consequence; but that he should wait for payment until Congress made an appropriation therefor; that for this extra brick-work, and other extra work performed about the building, the defendant made out a statement claiming about sixty thousand dollars, which has been forwarded to the Secretary of the Treasury, who has laid it before Congress for action; that the defendant has received the whole amount heretofore appropriated by Congress, on account of the building, and at various times during the progress of the work received sums of money on account of extra work, such as digging a well, laying drains, and grading, etc., amounting to some forty thousand dollars in all; but that he has not received any money on account of the two claims referred to, that no appropriation has been made by Congress therefor, and he is now in Washington urging the allowance of those claims. That an examination of the building had been made by Z. B. Tower, a captain and brevet-major in the United States army, under instructions from the Secretary of the Treasury of the United States, and the said Tower had reported that in his opinion Mr. Homer had been paid all that the work and materials in the building were worth; that his examination was *ex parte*, and no one was present on behalf of Mr. Homer, and that all his information as to payments to Mr. Homer, had been derived from papers forwarded to him by the Secretary of the Treasury at Washington. That the defendant had sold to plaintiff a lot of piles, for which the plaintiff was to pay two thousand dollars, but the witness

was of the impression that the amount was to be credited on the instrument now in suit.

The defendant moved for a nonsuit, which was refused.

The Court charged the jury that it was for them to say whether the time when the note was to become due had arrived, and how much was due, to which the defendant excepted.

The jury found a verdict for plaintiff for six thousand six hundred and six dollars and sixty-seven cents.

A motion was made for a new trial, and overruled by the Court. Defendant appeals.

*Cyril V. Grey* for Appellant.

A plaintiff must recover, if at all, according to the averments in his complaint, and a Court is not warranted in rendering a judgment in favor of the plaintiff when there is no averment in his complaint upon which the judgment can be based. Sterling *v.* Hanson, et al., 1 Cal., 478; Mickle et al. *v.* Sanchez, 1 ib., 200.

No principle is better settled than that the allegations and proofs must correspond. Cotes *v.* Campbell, 3 Cal., 191; Lewis et al. *v.* Meyer et al., 3 ib., 475; Moor *v.* Teed et al., 3 ib., 190.

"The contract was to deliver sound rice. The plaintiffs failed to prove it was sound, and therefore did not make out their case." Ruiz *v.* Norton et al., 4 Cal., 355.

The evidence of the witness Tower, as to payments to the defendant—such evidence being what he had learned from the papers forwarded to him from Washington, ought to have been excluded. No connection between the defendant and those papers had been shown. The witness also said expressly that he had not derived any knowledge on the subject of which he testified, from the defendant.

The testimony of the same witness as to the value of the work done by the defendant, ought to have been excluded.

He was not shown to be an expert, but an officer of the United States making an examination for the government. The defendant was not present at the examination. The evidence was irrelevant.

The testimony of the same witness ought to have been stricken out on motion of the defendant's counsel.

It was shown that the payments to which he had testified, purported to have been made by Major Hammond, a resident of San Francisco, whose attendance could have been secured.

The plaintiff ought to have been nonsuited. The plaintiff's evidence showed that the time of payment fixed by the plaintiff in the draft on which he had declared, had not arrived.

The Court ought to have instructed the jury to find a verdict for the defendant. The evidence of the defendant strengthened that already given by the plaintiff, showing that the claim of

the defendant out of the appropriation for which the plaintiff's demand was to be paid, was still pending and unsatisfied; there was not a particle of evidence that the said claim had been paid; no appropriation to pay it had been or could be proved; and the defendant had proved a just demand against the plaintiff for two thousand dollars.

*Robt. F. Morrison,* for Respondent.

The defence made is, that the contingency on which the draft was to become due, had not occurred at the time the action was brought.

This is purely a question of fact, and as it has been found by the jury in favor of the plaintiff, very strong reasons must be presented in the record, to justify this Court in saying that their finding was not true. It is insisted, on behalf of the appellant, that it is entirely immaterial, so far as the merits of this case are concerned, whether Congress ever made any appropriation or not.

When the draft was drawn, it was contemplated by both Homer and Nagle, that when Homer got his pay from the government, Nagle should be compensated for the work done upon, and the materials furnished by him for, the marine hospital. Now, can it be doubted, that this was the intention of the parties?

If, then, such was the intention at the time the draft was drawn, it is a cardinal rule of construction, that such must be the meaning of the instrument sued on.

Let us see, then, whether Homer has been paid by the government!

The proof shows, that according to the terms of the original contract, between the government and the appellant, in this case, the latter was entitled to receive, for building the marine hospital, one hundred and forty thousand dollars. If Homer received more than this amount, it must have been, and the proof clearly shows that it was, for, and on account of extra work; work that was not stipulated for in the original contract.

Well, then; the proof is, that Homer, the appellant, was paid by the government two hundred thousand dollars: sixty thousand dollars of which, was for extra work, and a large amount of this was paid him, Homer, after the draft was drawn. The date of the draft is ———, and it appears, from the testimony of Paul, that Homer continued to receive payments, down to the time of his departure from California, in ———, 1854.

Here we have sixty thousand dollars paid for extra work, and still the appellant contends that the draft is not due: because, forsooth, Congress has not made an appropriation. Are we to lose our claim, simply because Congress has not acted in the matter? Was it the passage of an appropriation bill, that the

parties had in view, when they made a settlement, and drew the draft? No! it was the payment of the money that they thought about, and it could not have entered into the imagination of either the plaintiff or defendant, as a matter of any importance whatever, whether the money was paid by the Secretary of the Treasury, with or without an appropriation by Congress.

But, if our claim was not due, at the time the action was commenced, when will it be due?

Does the testimony in the case show, that Homer is entitled to one single dollar more than he has received? No! but, on the contrary, it distinctly appears that he has been fully paid, and that the authorities at Washington will not allow him to have any more.

"The Supreme Court will not disturb the order of an inferior Court, in granting or refusing a new trial, unless manifest error shall appear." Bartlett v. Hogden, 3 Cal., 55.

"It is only in cases where the verdict of the jury strikes the mind, at first blush, as palpably and manifestly contrary to evidence, that the Court will, for that reason, interfere to set it aside." Dawson v. Robbins, 5 Gillman, (Ills.,) 72.

"A Court will not grant a new trial when, in its opinion, substantial justice has been done between the parties, though the law arising on the evidence would have justified a different result." Smith v. Shultz, 1 Scammon, 491.

"It does not always follow, that a new trial will be granted, even if the jury find against the weight of evidence—against the instructions of the Court, or through misdirection of the Court, on a point of law, provided the Court is satisfied that justice has been done." Leigh v. Hodges, 3 Scammon, 18.

"A new trial will not be granted against strong circumstances of equity." 2 McLean, 253.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., concurring.

The plaintiff declared upon the following instrument in writing:

$8,606 67.                    SAN FRANCISCO, Jan. 31, 1854.

Please to pay to my own order the sum of eight thousand six hundred and six dollars and sixty-seven cents, for value received, the same to be paid out of the appropriation, as soon as made, for the extra work done to the United States hospital building, in this city; a statement of which has been made out and regularly forwarded, by the proper authorities, to the Secretary of the Treasury of the United States, to be laid before Congress at the present session; this sum being in full of settlement this day made, for the furnishing and laying the brick, in said building,

agreeably to the terms of the contract between C. Homer and myself.

.                                    GEO. D. NAGLE.

To C. HOMER, Esq., San Francisco.

On the face of which is written, as follows, in the handwriting of defendant : " Accepted, C. Homer."

The complaint avers that the appropriation has been made, and the amount received by the defendant, out of which said draft is payable, and prays judgment for the same, with interest from the date of said appropriation.

Under the proof in the case, the only question for the jury to determine was, whether the contingency had happened, upon which the draft would become due. The appropriation made by Congress, for the hospital, was one hundred and eighty thousand dollars, and the first contract with Homer amounted to one hundred and forty thousand dollars. There were two supplemental contracts, for specific sums, but the amount is not shown in the record. There was a third supplemental contract, providing that the walls (which, by the original contract, were to be hollow,) should be built solid, and the contractor was to receive fifty-five dollars per thousand, for the extra bricks, and to wait until Congress made an appropriation therefor. The whole amount paid Homer was some two hundred thousand dollars; some sixty thousand dollars had been paid him beyond the sum mentioned in the original contract, and twenty thousand beyond the appropriation made by Congress.

The plaintiff contends that the understanding of the parties was, that he should be paid as soon as the defendant received compensation for the work from the federal government; and although the contract looked to an appropriation by Congress, still, if the money was paid by the proper department, he was then entitled to receive the amount due, and could not be required to wait for an act of Congress, to pay a debt which had already been satisfied.

This position of the plaintiff would seem to be correct. It is true that the draft was stated to be due when the appropriation should be made. But an appropriation was only a *means* to reach the end contemplated by the parties, namely : the payment to Homer, for the extra brick-work. It was the *payment* to Homer that made him liable to Nagle. It does not matter whether Homer was paid in one form, or another, so he was paid.

Whether Homer was paid for the particular extra work, was a question of fact for the jury. Other extra work had been done by the defendant, and whether the payments he received for extra work were partly for this extra work, was a question in reference to which there was a conflict of testimony. The jury

having found for the plaintiff, and there being testimony to sustain their finding, we cannot disturb their verdict.

As to the objection to the admission of the testimony of Maj. Tower, we think it is not material, as no injury could have been done by the introduction of those portions which might not have been strictly proper. Taken in connection with the testimony of the other witnesses, no injury was done to the defendant.

Judgment affirmed.